UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAS BRISAS CONDOMINIUM
HOMES CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.                                      Case No.:  2:21-cv-41-KCD

EMPIRE INDEMNITY
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

Before the Court is Plaintiff Las Brisas Condominium Homes Condominium Association, Inc.'s Motion to Compel. (Doc. 193.)[1] Defendant Empire Indemnity Insurance Company has responded (Doc. 198), making this matter ripe. For the reasons below, Las Brisas's motion is denied.

## I. Background

This is an insurance dispute. Las Brisas alleges it submitted an insurance claim for hurricane damage that Empire wrongly refused to pay. The operative complaint contains a single claim for bad faith under Florida law. (Doc. 72.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

Among other relief, Las Brisas is seeking punitive damages. To prevail on this claim, it must prove "the acts giving rise to the violation occur with such frequency as to indicate a general business practice." Fla. Stat. § 624.155(5). In other words, Las Brisas must show Empire "committed the acts giving rise to [bad faith] with such frequency as to indicate a general business practice." *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No. 2:07-CV-00386, 2009 WL 2252094, at *1 (M.D. Fla. July 24, 2009).

Given the expansive nature of the punitive damages inquiry—*i.e.*, Empire's "general business practice"—the universe of relevant discovery is necessarily broader than a typical first-party insurance dispute. Against this backdrop, Las Brisas has propounded discovery requests aimed at Empire's "reinsurance and reserve setting." (Doc. 193 at 3.) This material is relevant, according to Las Brisas, because it provides insight into Empire's valuation of claims and could demonstrate a lack of good faith regarding claim settlement practices. (*Id.* at 4-5.)

Empire has objected, claiming the discovery requests are "overbroad and irrelevant to the posture of the case." (Doc. 198 at 5.)[2] Among other problems, Empire notes that Las Brisas is seeking "all documents in [it's] possession that could conceivably relate in any way to" a list of broad topics. (*Id.* at 6.)

---

[2] Empire's brief is not paginated. Thus, reference is made to the page numbers generated by the Court's electronic filing system.

2

Las Brisas now moves the Court to overrule Empire's objections and "compel better responses." (Doc. 193 at 13.)

## II. Discussion

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Consistent with this standard, discovery aims to allow a broad search for facts that may aid a party in the preparation or presentation of his case. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

But the scope of permissible discovery is not unbounded. Discovery requests must be relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). The rule of proportionality is designed to erect reasonable guardrails around Rule 26's otherwise broad range. It prevents litigants from gaining a tactical advantage through burdensome requests that have little or no value to the case. "[E]ssentially[,] the expected benefits of the discovery must be in line with the cost and burden of the discovery and the value of the case." *Sloan v. Cunningham*, No. CA 16-00202-KD-C, 2017 WL 11441904, at *2 (S.D. Ala. Aug. 23, 2017).

3

Las Brisas insists that its discovery requests "are specific [and] narrowly tailored." (Doc. 193 at 3.) Not so. Here is what Las Brisas asks for:

1. Please provide all documentation for the timeframe of 2015 through 2019 related to the following:

    a. Reinsurance Pooling Agreements: This includes, but is not limited to, all executed reinsurance pooling agreements, including any amendments, addendums, or riders, that involve your company, Empire Indemnity Insurance Company.

    b. Pooling Ratios and Premium Allocation: Please include documents detailing the agreed-upon pooling ratios and premium allocation for each participating company within the reinsurance pool.

    c. Loss Sharing Provisions: Provide documentation outlining the loss sharing provisions and any associated terms and conditions for each reinsurance pooling agreement.

    d. Reinsurance Treaties and Facultative Certificates: Please provide copies of all in-force reinsurance treaties and facultative certificates applicable to the reinsurance pooling arrangements.

    e. Claims and Loss Data: Specifically, those historical claims and loss data related to the reinsurance pooling agreements in place at the time of Hurricane Irma, including a breakdown by individual pool participant and risk category, as well as those gather from 2015 through 2019.

    f. Financial Statements and Reports: Please provide the financial statements and reports for each participating company within the reinsurance pool, as well as any solvency ratios and credit ratings.

    g. Correspondence and Meeting Records: This request contemplates any relevant correspondence, meeting minutes, and communication records between the participating companies and the reinsurance providers concerning the reinsurance pooling agreements.

4

    h. Exposure Reports: Please provide exposure reports for each participating company within the reinsurance pool. These reports should include a breakdown of exposures by risk category, geographical location, and policy type.

    i. Aggregate Pool Exposure Reports: Documentation detailing the aggregated exposures across all participating companies within the reinsurance pool.

    j. Financial Data Exchanges: This is a request for documentation on the mechanisms and frequency of financial data exchanges between the participating companies and the reinsurance providers, as well as any data sharing agreements in place.

    k. Affiliate Transactions: Please provide documented details on any transactions, including premiums, claims, and commissions, between the reinsurance pool participants and their respective affiliates.

    l. Risk Modeling and Analytics: This includes documentation on the risk modeling and analytics methodologies used to assess and monitor exposures within the reinsurance pool, as well as any stress-testing scenarios and catastrophe models applied.

    m. Capital Adequacy and Solvency Assessments: Please provide any reports or analysis related to capital adequacy and solvency assessments for the reinsurance pool, with a focus on each participating company's ability to meet its financial obligations under the pooling arrangements.

    n. Regulatory and Compliance Documentation: Any documentation concerning regulatory and compliance requirements for financial data exchanges and exposure reporting within the reinsurance pool and its affiliates.

2. Please provide all documentation from 2015 through 2019 related to the following:

    a. Claims Processing Efficiency: Provide documentation held by Empire Indemnity Insurance Company on the average time it takes to process claims, including the percentage of claims processed within specific timeframes (e.g., 24 hours, 48 hours, one week).

5

b. Claims Approval and Denial Rates: Provide documentation held by Empire Indemnity Insurance Company evidencing the percentage of claims approved and denied by the insurance company, including a breakdown by claim type, policyholder demographics, and reasons for denial.

c. Claims Loss Ratio: Provide documentation held by Empire Indemnity Insurance Company on the claims loss ratio, which represents the proportion of paid claims to earned premiums.

d. Customer Satisfaction Metrics: Provide documentation held by Empire Indemnity Insurance Company on customer satisfaction levels, including data from customer surveys, Net Promoter Scores (NPS), and other relevant metrics related to claims processing and resolution.

e. Claims Handling Expenses: Provide documentation held by Empire Indemnity Insurance Company on the expenses associated with the claims organization, such as personnel costs, technology investments, and overhead costs.

f. Claims Fraud Detection: Provide documentation held by Empire Indemnity Insurance Company on the company's efforts to detect and prevent fraudulent claims, including data on the number of identified fraudulent claims, fraud detection rate, and the technology used to combat fraud.

g. Key Performance Indicators (KPis): Provide documentation held by Empire Indemnity Insurance Company of the KPis, or similar metric(s), used to measure the performance of the claims organization, along with historical data for each indicator and benchmarks for comparison.

h. Employee Training and Development: Provide documentation held by Empire Indemnity Insurance Company on the company's training and development initiatives for claims employees, including details on training programs, employee certifications, and ongoing education opportunities.

    i. Claims Reserving Practices: Provide documentation held by Empire Indemnity Insurance Company on the company's reserving practices, such as methodologies used, reserving adequacy, and data on reserve releases or strengthening.

    j. Goals and Objectives: Provide documentation held by Empire Indemnity Insurance Company related to the claims organization, their goals, financial goals, and performance analysis.

    k. Performance Analysis Reports: Provide documentation held by Empire Indemnity Insurance Company regarding periodic performance analysis reports that detail the progress made toward achieving the goals and objectives of the claims organization, including any obstacles encountered and plans to overcome them.

    l. Exposure Reports: Provide documentation held by Empire Indemnity Insurance Company regarding exposure reports stemming from Hurricane Irma. These reports should include, but should not be limited to, a breakdown of exposures by risk category, geographical location, and policy type affected by Hurricane Irma.

    m. Technology and Automation: Provide documentation held by Empire Indemnity Insurance Company on the use of technology and automation in the claims organization, including details on the systems and tools employed, the degree of automation, and any plans for future technology investments.

    n. Regulatory Compliance: Provide documentation held by Empire Indemnity Insurance Company on the company's compliance with applicable regulations and industry standards, including data on any past regulatory violations, fines, or sanctions related to the claims organization.

(Doc. 193-2.) Boiled down, Las Brisas is demanding Empire provide every document created over a five-year period that relates to twenty-eight topics. And while some topics are rather discrete, many are not. Consider this one:

7

"Provide documentation held by Empire Indemnity Insurance Company on the company's training and development initiatives for claims employees." (*Id.* at 3.)

Even assuming Las Brisas's proposed topics are relevant to the claims (which is itself debatable), its request for "all documentation" takes this discovery well outside Rule 26. Literally construed, Las Brisas's discovery calls for the production of every scrap of paper or bit of electronically stored information that exists relating to the topics covered. By sweeping so broadly, the requests necessarily capture a host of documents that would have little to no relevance. For instance, compliance would ostensibly require Empire to produce any email exchanged between its employees that tangentially relates to risk modeling and analytics. As other courts have found, this approach is "patently overbroad." *Stellato v. Medtronic Minimed, Inc.*, No. 6:19-CV-2180-ORL-37DCI, 2021 WL 3134685, at *3 (M.D. Fla. Feb. 2, 2021).

This is not to say that Las Brisas is precluded from seeking discovery on the identified topics. Targeted requests may well survive scrutiny. But the current approach, which resembles a shotgun blast, is not what Rule 26 envisions. Accordingly, Las Brisas's Motion to Compel (Doc. 193) is **DENIED**.

**ENTERED** in Fort Myers, Florida on June 16, 2023.

*/s/ Kyle C. Dudek*
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

9