UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAS BRISAS CONDOMINIUM
HOMES CONDOMINIUM
ASSOCIATION, INC.,

     Plaintiff,

v.                             Case No.:  2:21-cv-41-KCD

EMPIRE INDEMNITY
INSURANCE COMPANY,

     Defendant.

_____/

## ORDER

Before the Court is Plaintiff Las Brisas Condominium Homes Condominium Association's motion for summary judgment. (Doc. 206.)[1] Defendant Empire Indemnity Insurance Company has responded in opposition. (Doc. 212.) For the reasons stated below, Las Brisas' motion is denied.

## I. Background

This lawsuit stems from Hurricane Irma. At the time of the storm, Las Brisas held an insurance policy with Empire. (Doc. 81 ¶ 8.) Las Brisas allegedly suffered roof damage during the hurricane and submitted a claim.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

Within weeks of receiving the claim, Empire sent a field adjuster to survey the damage. He reported "severe wind damage to tile roofs on all locations." (Doc. 206-4 at 37:17-38:2.) Empire then retained a structural engineer to inspect the property. His report, in contrast, found no storm-related damage. The engineer attributed the roof problems to "foot traffic, wear and tear, [and] thermal expand and contraction." (*Id.* at 92:18-19.)

Unhappy with how Empire was handling its claim, Las Brisas filed a civil remedy notice with the Florida Department of Financial Services. This notice, commonly referred to as a CRN, is a statutory prerequisite to suing an insurance carrier. *See Landers v. State Farm Fla. Ins. Co.*, 234 So. 3d 856, 859 (Fla. Dist. Ct. App. 2018) ("[T]he purpose of the CRN is to facilitate and encourage good-faith efforts to timely settle claims before litigation[.]").

While the CRN was pending, Empire sent the structural engineer back to the property. This was apparently done to investigate new claims of membrane problems with the roof. He again reported no hurricane damage.

Despite the engineer's report, Empire sent Las Brisas a check for $207,313.21. The parties dispute what (if anything) accompanied the check. According to Empire, the check included a cover sheet that explained "payment was being made pursuant to building coverage." Las Brisas, however, says "the payment issued was never accompanied by documentation explaining same."

Several days after issuing the check, Empire responded to the CRN. Citing the engineer's report, Empire denied there was covered damage to the property. As for the payment, Empire explained "the initial report was misinterpreted and a mistaken payment was made." (Doc. 212-1, Ex. 3.)

Las Brisas eventually cashed the check. But when the parties could not agree on the rest of the claim, Empire invoked its right to appraisal under the insurance policy. (Doc. 206 ¶ 11, Doc. 212 at 13.) The appraisal panel found covered damage and awarded Las Brisas $748,230.07. Empire tendered the balance of the appraisal award owed, and this lawsuit for bad faith under Fla. Stat. § 624.155 followed. (Doc. 72.)

Las Brisas now seeks summary judgment on several of its claims related to Empire's claim-handling practices. (Doc. 206.)

## II. Standard of Review

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to the judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, a judge "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "An issue is genuine if a reasonable jury could return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan.

25, 2019). And a "fact is material if it may affect the outcome of the case under the applicable substantive law." *Id.*

"The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact." *Desai v. Navigators Ins. Co.*, 400 F. Supp. 3d 1280, 1287 (M.D. Fla. 2019). "If the movant does so, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law." *Id.* "The assertion that a fact is genuinely disputed. . . must [be] supported by particular parts of materials in the record. . . or showing that the materials cited to do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Moore v. Eger,* No. 616CV303ORL28GJK, 2017 WL 6367598, at *2 (M.D. Fla. Oct. 20, 2017).

"In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* at *3. Any reasonable doubt about the facts must be resolved in favor of the opposing party. *Id.*

## III. Discussion

"Florida law provides that an insurer owes a duty of good faith to its insured." *Montanez v. Liberty Mut. Fire Ins. Co.*, 824 F. App'x 905, 909 (11th Cir. 2020). "[G]ood faith in the insurance context is generally defined as the

duty to consider the insured's interests as well as the interests of the insurer when the insurer is discharging a specific responsibility pursuant to the insurance contract, such as its duty to defend or settle." *Cont'l Cas. Co. v. City of Jacksonville*, 550 F. Supp. 2d 1312, 1337 (M.D. Fla. 2007).

Whether an insurance carrier has acted in bad faith is determined by the totality of the circumstances. *Losat v. Geico Cas. Co.*, No. 8:10-CV-1564-T-17, 2011 WL 5834689, at *6 (M.D. Fla. Nov. 21, 2011). Because this is a fact-driven inquiry, "[t]he question of whether this standard has been met is ordinarily for the jury to decide." *Davis v. Nationwide Ins. Co. of Am.*, 548 F. Supp. 3d 1295, 1300 (S.D. Fla. 2021).

As mentioned, Las Brisas is moving for summary judgment on allegations related to Empire's claim-handling practices. Under Fla. Stat § 626.9541(1), an insured may assert a bad-faith claim by showing its insurer engaged in unfair claim practices. At issue here are two subsections of the statute:

> (1)   UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS.—The following are defined as unfair methods of competition and unfair or deceptive acts or practices:
>
> (i)   Unfair claim settlement practices.—
>
> 3.   Committing or performing with such frequency as to indicate a general business practice any of the following:

b. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

f. Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement[.]

Fla. Stat. § 626.9541(1)(i)(3)(b), (f).

## A. There is a Genuine Dispute of Fact Preventing Summary Judgment on Las Brisas' Claim Under § 626.9541(1)(i)(3)(f)

Las Brisas contends Empire violated subsection (f) by issuing payment on the claim but failing to explain its coverage position. (Doc. 206 at 8.) In support, Las Brisas cites deposition testimony from Empire's corporate representative, who could not find a formal coverage decision or a letter accompanying the $207,313.21 check during his deposition. (Doc. 206 at 9.) This, according to Las Brisas, proves Empire "never even sought fit to provide . . . any determination of coverage for the underlying claim." (Doc. 206 at 9.)

The Court is unconvinced. First, the corporate representative's testimony does not prove Empire's liability. He stated the requested documentation could not be found as he sat in the deposition, not that Empire never explained its conduct or issued a coverage decision. (Doc. 206 at 9, Doc. 206-5 at 56-57.) Viewing the deposition testimony in the light most favorable to Empire, it does not quite establish a violation of § 626.9541(1)(i)(3)(f).

But even reading the testimony as Las Brisas asks, "there are, in fact, genuine factual disputes which preclude judgment as a matter of law." *Desai*, 400 F. Supp. 3d at 1287. Empire has submitted affidavits from its corporate representative and an expert, Ted Marules, Sr. (Doc. 212-1.) The corporate representative attests that "cover correspondence was attached to the check sent [for] $207,313.21," which "explained the claim for which the payment was being made and stated it was being made pursuant to building coverage." (*Id.* at 3.) Similarly, Mr. Marules claims that he found "coverage correspondence" when he reviewed the file. (Doc. 212-4 ¶ 20.)

The record also includes a letter Empire sent to Las Brisas and the Florida Department of Financial Services in response to the CRN. (*Id.* at 90-93.) It states:

> Vertex determined that the properties at Las Brisas were not functionally damaged by wind-borne debris resulting from Hurricane Irma. Instead, the cracked tiles were due to cyclical thermal expansion and contraction and due to foot traffic during routine access and maintenance. Vertex also determined that loose cap and field tiles were consistent with age, deterioration, and wear/tear of the materials used to adhere/attach the tiles to the roof.
>
> Despite the determination of no wind damage to the roof, Empire's initial estimate was based on a misinterpreted analysis of Vertex's report dated August 2, 2018. A follow-up inspection was done and the follow-up report from Vertex dated October 16, 2018 also noted no hurricane damage was found. Again, unfortunately the initial report was

> misinterpreted and a mistaken payment [w]as made. Empire has tendered a check for $207,313.21 to the Insured to honor the initial indication that the check would be forthcoming.
>
> The CRN claims that Las Brisas' damages are covered. Empire denies this. Vertex did not find any Hurricane Irma damage on the roofs. The CRN also claims that "Empire's adjustment of this claim found wind damage to the buildings within the association." Empire did not find wind damage.

(*Id*. at 92.)

At minimum, the letter creates a genuine issue of material fact as to whether Empire promptly provided Las Brisas a reasonable explanation for handling its claim and paying the $207,313.21. A jury must weigh the evidence and determine whether the letter satisfies the requirements of § 626.9541(1)(i)(3)(f). *See Wilson v. S & L Acquisition Co., L.P.*, 940 F.2d 1429, 1437 (11th Cir. 1991) ("It is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences[.]").

## B. There is a Genuine Dispute of Fact Preventing Summary Judgment on Las Brisas' Claim Under § 626.9541(1)(i)(3)(b)

Las Brisas separately alleges Empire violated subsection (b) when it issued payment and demanded appraisal because such actions depart from "the actual coverage assessment, [which was] a denial of coverage." (Doc. 206 at 11.) Put another way, Empire denied coverage and tried to misrepresent its decision by partially paying the claim and electing appraisal. (*Id*. at 11-12.)

Las Brisas again relies on Empire's corporate representative. Specifically, it cites his testimony that Empire does not believe the policy covers the damaged roofs, and appraisal is typically used when there is a dispute about money rather than coverage. (Doc. 206 at 11.) From this, Las Brisas concludes Empire's payment and election of appraisal must have been misrepresentations made to hide an unjustified coverage denial.

The Court is again unconvinced. Las Brisas' conclusion is several logical steps removed from the corporate representative's testimony. Nothing in the deposition transcript suggests Empire took either action to mislead Las Brisas. It's also unclear whether there was a misrepresentation in this context. A misrepresentation is "[t]he act or an instance of making a false or misleading assertion about something, [usually] with the intent to deceive." Black's Law Dictionary (11th ed. 2019).

In any event, Empire has established a genuine factual dispute. First, the letter to the Department of Financial Services states that Empire paid Las Brisas to "honor the [mistaken] initial indication that [a] check would be forthcoming" resulting from an employee's misinterpretation of its expert report. (Doc. 212-1 at 92.) Next, the affidavit of Empire's corporate representative provides a detailed timeline of the company's attempts to resolve the claim and states it only elected appraisal "after it became apparent the claim could not be resolved otherwise." (*Id*. ¶ 29.) Given this evidence, a

reasonable jury could find that Empire's payment was simply a business decision to honor a mistaken commitment. And its use of the appraisal process was a further attempt to resolve the claim. When viewed through this lens, Empire's actions, even if improper, fall short of bad faith. *See Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 9 (Fla. 2018) ("[Negligence alone is insufficient to prove bad faith."); *see also Losat v. Geico Cas. Co.*, No. 8:10-CV-1564-T-17, 2011 WL 5834689, at *9 (M.D. Fla. Nov. 21, 2011) ("[A]n insurer who is only negligent in its handling of an insured's claim, without more facts, does not rise to the bad faith standard[.]").

## IV. Conclusion

Resolution of a statutory bad-faith claim "is rarely possible as a mater of law." *Cadle v. Geico Gen. Ins. Co.*, No. 6:13-CV-1591-ORL-31G, 2014 WL 4983746, at *3 (M.D. Fla. Oct. 6, 2014). Such rare circumstances are not present here considering the evidence discussed above. Accordingly, Las Brisas' Motion for Summary Judgment (Doc. 206) is **DENIED.**

**ORDERED** in Fort Myers, Florida on December 28, 2023.

Kyle C. Dudek
United States Magistrate Judge