IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAS BRISAS CONDOMINIUM HOMES
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

EMPIRE INDEMNITY INSURANCE
COMPANY,

    Defendant.
_____/

Civil Action No.: 2:21-cv-00041
State Case: 20-CA-008541

### EMPIRE INDEMNITY INSURANCE COMPANY'S MOTION TO COMPEL DEPOSITION DATES OF STEVEN THOMAS AND IRVING ABCUG

Defendant, EMPIRE INDEMNITY INSURANCE COMPANY ("EMPIRE"), by and through its undersigned attorneys, pursuant to Federal Rule of Civil Procedure 30, hereby files its Motion to Compel Deposition Dates of Steven Thomas and Irving Abcug, on the grounds Mr. Thomas's and Mr. Abcug's testimony is relevant and pertinent to the issues asserted in the instant Complaint. On May 10, 2024, Plaintiff's counsel indicated it would not agree to schedule such depositions, despite Mr. Thomas's and Mr. Abcug's roles as fact witnesses in the instant matter. In support, Empire states as follows:

1

## BACKGROUND OF DISCOVERY SOUGHT

Prior to suit, a commercial windstorm claim was brought by Plaintiff to its insurer, Empire. Subsequently, multiple witnesses were retained to provide opinions regarding the condition of the property and/or cause of loss. This included: (1) independent adjuster Christopher Thode, retained by Empire; (2) engineer Christopher Smith, retained by Empire; (3) "federally appointed roof expert" Steven M. Thomas, retained by Las Brisas; and (4) engineer Irving E. Abcug, retained by Las Brisas. Empire did not object to Plaintiff's requests to depose Mr. Smith and Mr. Thode, and those depositions have been completed. Both Mr. Thomas and Mr. Abcug wrote a report prepared by Roof Leak Detection Company, which is attached hereto as **Exhibit A.** Empire subsequently requested Mr. Thomas's and Mr. Abcug's depositions, to which Plaintiff objected on the grounds as Plaintiff's counsel disagrees how its "underlying, consulting experts would provide any relevant information as to [Empire's] handling of the claim." Further, Roof Leak Detection was "retained through [its] firm as consulting experts, and [it] maintain[s] a claim of privilege in that regard."

It is worth emphasizing Plaintiff's claims as advanced in the Second Amended Complaint [D.E. 72], which included Empire adjusted the claim in bad faith because: (1) Empire "attempted to limit their exposure and compensate LAS BRISAS inadequately by suggesting an improper method of repairs"; (2) Empire

2

"delay[ed] to adjust LAS BRISAS's subject claim"; (3) Empire "delay[ed] the adjustment process; (4) Empire "delay[ed] the appraisal process; (5) Empire mishandled "LAS BRISAS's claim"; (6) Empire "improperly attempt[ed] to not pay all covered damages"; (7) Empire "underestimate[ed] the value of LAS BRISAS's claim"; (8) Empire "misrepresent[ed] and/or omitt[ed] pertinent facts related to the coverages and/or facts of the loss at issue, so as to provide an illegitimate basis for delay of the claim"; (9) Empire delayed "LAS BRISAS's claim without conducting a reasonable investigation based upon available information." The crux of Plaintiff's claim is that Empire should have acted upon the alleged information provided to Empire indicating the only proper handling of the claim would have involved replacing all the roofs at the property in their entirety. **Significantly, a portion of the information Plaintiff alleges Empire failed to act upon was provided by Plaintiff's "experts," Steven Thomas and Irving Abcug.** While the basis for a bad faith claim concentrates on an insurer's handling of a claim, a court must look to all of the information available to the insurer when making its claim handling decisions. In the instant case, at least a significant amount of the information available to Empire came from Mr. Thomas and Mr. Abcug. As such, Empire has the right to depose these two individuals regarding the information they provided and reports they prepared to ascertain the

3

veracity of their opinions and whether it was inappropriate, as Plaintiff claims, for Empire to have disregarded their opinions as part of the claim adjusting process.

## MEMORANDUM OF LAW

### A. Discovery, Generally

Discovery is generally governed by Federal Rule of Civil Procedure 26(b), which states:

(b) Discovery Scope and Limits

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

More specifically, depositions are governed by Federal Rule of Civil Procedure 30, which states:

(a) When a Deposition May Be Taken

(1) Without Leave. A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.

Courts have generally held the discovery standard to be liberal. *See, e.g. Vazquez v. Marriott International, Inc.*, 2018 WL 1988875 at *1 (Fla. M.D. 2018)

("Given the liberal discovery standard, the fact that the discovery sought by Defendant appears relevant, and the fact that the Plaintiff has not met her burden of showing good cause with specificity as to why the depositions should not proceed, I find the motion [for protective order] is due to be denied"); *Townsend v. Hospital Bd. Of Directors of Lee County*, 2010 WL 3702546 (Fla. M.D. 2010); *Tate v. U.S. Postal Service¸* 2007 WL 521848, *1 (S.D. Fla. 2007) ("It is well established that courts employ a liberal discovery standard in "keeping with the spirit and purpose of the discovery rules").

### B. Motions for Protective Order

When discovery falls outside the permissible scope, Fed. R. Civ. P. 26(c) provides a mechanism by which the party objecting to the discovery may obtain a protective order:

(c) Protective Orders.

> (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>> (A) forbidding the disclosure or discovery;

>    (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
>    (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
>    (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
>    (E) designating the persons who may be present while the discovery is conducted;
>
>    (F) requiring that a deposition be sealed and opened only on court order;
>
>    (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>
>    (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Specifically, the Eleventh Circuit has held that "Rule 26(c) allows the issuance of a protective order if 'good cause' is shown. Good cause 'generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). The Eleventh Circuit has identified four factors to consider in determining the existence of good cause: "'[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.'" *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985). In addition to requiring good cause, this circuit has also

required the district court to balance the interests of those requesting the order. *Farnsworth v. Procter & Gamble Co.*, 758 F.3d 1545, 1547 (11th Cir. 1985). "Rule 26(c) provides that upon a showing of good cause, a court 'may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order.") (citations omitted). *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005).

**Significantly, Plaintiff has not petitioned the court for a protective order, but is rather relying on its refusal to allow the depositions to proceed as sufficient actions to prevent the depositions from taking place.** Even if Plaintiff abided by the proper procedure to prevent the depositions from taking place, "the burden of showing good cause to preclude a deposition altogether is a heavy one," leading to "protective orders prohibiting depositions [being] rarely granted. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). The party requesting a protective order must make a specific demonstration of facts in support of the request for protective order, rather than conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one.

*New World Network Ltd. v. M/V NORWEGIAN SEA*, 05-22916 CIV, 2007 WL 1068124, at *1 (S.D. Fla. Apr. 6, 2007). If a sufficient showing of good cause is made, the burden then shifts to the nonmoving party to show why relief should still not be granted, either because of undue prejudice or the importance of the discovery at issue. *Id*. Empire contends Plaintiff is unable to make such a sufficient showing even if it were to move for a protective order.

### C. Bad Faith Discovery and Case Law, Generally

Bad faith claim handling is governed by Florida Statute §624.155, which enumerates the violations by an insurer that can constitute bad faith on the part of the insurer. Significantly, Florida Statute §624.155 states:

(1) Any person may bring a civil action against an insurer when such person is damaged:

(b) By the commission of any of the following acts by the insurer:

1. Not attempting in good faith to settle claims when, under all the **circumstances**, it could and should have done so…

…

3. …failing to promptly settle claims, when the obligation to settle a claim has become **reasonably clear**…

(emphasis added)

As Plaintiff's own expert conceded in his report, the "determination of whether an insurer acted in bad faith in handling an insured's claims is generally decided under the **totality of the circumstances**… [and] each case is decided on its facts." *See Cadle v. GEICO General Insurance Company,* 838 F.3d 1113, 1123-24 (11th Cir. 2016) (emphasis added). The *Cadle* case was a continuation of the Florida Supreme Court's decision in *Berger v. Infinity Ins. Co.*, which held:

> "An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured.... The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because *the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured*, negligence is relevant to the question of good faith."

896 So.2d 665, 668-69 (Fla. 2004) (emphasis added).

Again, the *Cadle* and *Berger* courts emphasized the decision as to whether an insurer acts in bad faith involves *investigation* and *evaluation*, which includes a totality of the circumstances assessment. Further, a "valid bad faith claim [under Florida law] requires a 'causal connection between the damages claimed and the insurer's bad faith' in handling claims against the insured." *Mesa v. Clarendon*

9

*Nat. Ins. Co.*, 799 F.3d 1353, 1359 (11th Cir. 2015) (quoting *Perera v. U.S. Fid. & Guar. Co.*, 35 So.3d 893, 903-04 (Fla. 2010)). Courts have held, on multiple occasions, in examining a bad faith claim, "the factfinder must examine the insurer's '**entire conduct** in the handling of the claim, including the acts or omissions of [the insurer].'" *Wiggins v. Allstate Property and Cas. Ins. Co.*, 94 F.Supp. 1276, 1281-82 (Fla. S.D. 2015) (emphasis added) (quoting *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 672 (Fla. 2004)). *See also Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla. 1980).

In conclusion, the determination as to whether an insurer acts in bad faith requires an assessment of all facts and information known to it prior to tendering its coverage decision, which would ultimately affect the conclusion as to whether the insurer should have known its coverage determination was improper. Part of the facts and information presented to Empire, which Plaintiff contends Empire should have considered, was presented by Steven Thomas and Irving Abcug. As such, Empire should have the right to depose those individuals to ascertain whether it was proper for Empire to not tender a coverage decision or tender payment in accordance with their report.

## Conclusion

Based on the liberal standard of discovery, and the case law on determining whether an insurer acts in bad faith is contingent on a totality of the circumstances,

this Court must order Plaintiff provide dates for the depositions of Steven Thomas and Irving Abcug, whose opinions were allegedly improperly ignored by Empire. As stated above, Plaintiff has not moved for a protective order pursuant to Federal Rule of Civil Procedure 26 as is required to prevent discovery from taking place. However, even if Plaintiff were to move for a protective order, Plaintiff would be unable to establish how the depositions of Steven Thomas's and Irving Abcug's deposition would be subject to a protective order, as the depositions would not cause any harm. As such, the Court should order the depositions of Steven Thomas and Irving Abcug must take place.

WHEREFORE, EMPIRE INDEMNITY INSURANCE COMPANY, respectfully requests that this Court enter an order compelling the depositions of Steven Thomas and Irving Abcug, and any such further relief as deemed equitable by the Court.

## Local Rule 3.01(g) Certification

In accordance with Local Rule 3.01(g), the undersigned conferred with Plaintiff's counsel through multiple emails, culminating on May 10, 2024. The parties exchanged emails in which Plaintiff's counsel advised it could not agree to allow the depositions of Steven Thomas and Irving Abcug to take place.

The parties were unable to resolve any part of this Motion.

/s/ *J. Michael Grimley, Jr.*

J. MICHAEL GRIMLEY, Jr., FL Bar No. 0667234
EDWARD N. KRAKAUER, Fla Bar No. 117797
Galloway, Johnson, Tompkins, Burr & Smith, PLC
118 East Garden Street
Pensacola, FL 32502
Service email: jmgservice@gallowaylawfirm.com
(850) 436-7000 Telephone
(850) 436-7099 Facsimile
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on **May 25, 2024**, pursuant to Fla. R. Jud. Admin. 2.516, a true and correct copy of the foregoing has been filed via CMECF and/or served via Electronic Mail all parties.

/s/ *J. Michael Grimley, Jr.*

J. MICHAEL GRIMLEY, JR.
EDWARD N. KRAKAUER

**SERVICE LIST**
**United States District Court**
**Middle District of Florida**
**Fort Myers Division**

| Shaun J. Marker, Esq. <br> s.marker@merlinlawgroup.com <br> Robert H. Gregory, Esq. <br> rgregory@merlinlawgroup.com <br> Merlin Law Group, P.A. <br> 222 Lakeview Avenue, Ste. 1250 <br> West Palm Beach, FL 33401 <br> 561-855-2120 <br> 561-249-1283 (Facsimile) <br> *Attorney for Plaintiff* <br> (via CM/ECF) | J. Michael Grimley, Jr., Fla. Bar No. 0667234 <br> mgrimley@gallowaylawfirm.com <br> EDWARD N. KRAKAUER, Fla Bar No. 117797 <br> ekrakauer@gallowaylawfirm.com <br> Galloway, Johnson, Tompkins, Burr & Smith, PLC <br> 118 East Garden Street <br> Pensacola, FL 32502 <br> (850) 436-7000 <br> (850) 436-7099 (facsimile) <br> jmgservice@gallowaylawfirm.com <br> *Counsel for Empire Indemnity Insurance Company* <br> (via CM/ECF) |